# EXHIBIT A

COPY

Daniel P. Buckley
Buckley Law Office, P.C.
125 West Mendenhall, Suite 201
Bozeman, Montana 59715
406-587-3346
dbuckley@danbuckleylaw.com

Timothy P. Hammar
Angel, Coil & Bartlett
125 W. Mendenhall, Ste. 201
Bozeman, MT 59715
406.586.1926
timothy@angelcoilbartlett.com

*Attorneys for Plaintiffs*

CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2017 MAR 17 AM 10 28

FILED

BY _____
DEPUTY

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

| DONALD BOULTER, | Cause No. DV 17-0385 |
|---|---|
| Plaintiff, | INGRID GUSTAFSON |
| vs. | PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT |
| THE HARTFORD FIRE INSURANCE COMPANY, AND JOHN DOES I-V, | |
| Defendants. | |

COMES NOW the Plaintiff, Donald Boulter, by and through counsel, and hereby alleges, states and complains as follows:

### FACTS

1. This case is a claim for uninsured motorist coverage due to serious injuries sustained by Plaintiff from an uninsured motorist.

2. On the day in question, March 24, 2014, Plaintiff Donald Boulter was walking to the insured vehicle to drive the vehicle, and was unexpectedly faced with a

negligent motorist causing him to slip and fall, which caused Plaintiff to violently hit the back of his head. Plaintiff Don Boulter suffered a serious head injury. The motorist left the scene, and has never been identified. As such, the unidentified motorist is an uninsured motorist.

3. Mr. Boulter submitted a claim to Defendant for uninsured motorist coverage. Defendant denied on the sole grounds that Mr. Boulter was not "occupying" the insured vehicle providing uninsured motorist benefits.

4. Defendant's denial is wrong and Plaintiff requests the Court's declaratory judgment affording coverage to Plaintiff.

5. At all times relevant hereto, Plaintiff Donald Boulter resided in Whittier, California.

6. At all times relevant hereto, Defendant Hartford Fire Insurance Company has been an insurance company licensed to do business in the State of Montana and organized and incorporated in the State of Connecticut.

7. The true names or capacities, whether individual, corporate, partnerships, associated, entities, or otherwise, of Defendant John Does I through V, inclusive, are unknown to Plaintiffs, including the name of any further insuring entities that may have sold or adjusted the UM insurance which is the subject of this suit. Plaintiffs allege that each of the Defendants sued as a John Doe is potentially legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this Court to amend this Complaint to insert their true names and capacities in place of the fictitious names when and if the same become known to Plaintiffs. Therefore, Plaintiffs sue Defendant John Does I through V by using these fictitious names.

8. On the date of the incident, Plaintiff was an employee of WesTower Communications.

9. Defendant sold business automobile insurance to WesTower Communications.

10. Attached hereto as **Exhibit A** is the relevant portion of the business automobile insuring policy, entitled "Colorado Uninsured Motorist Coverage – Bodily Injury" (hereafter "Policy").

11. Defendant has stated in correspondence that this Colorado Endorsement governs the claim herein. (Defendant's correspondence dated January 27, 2017, attached hereto as **Exhibit B**, pp. 1-3).

12. The vehicle that Mr. Boulter was using on the day in question was insured by Defendant for uninsured motorist coverage on the day in question. That vehicle was a 2011 International Van (hereafter, the "insured vehicle"). (**Exhibit B**, pp. 2-3).

13. On March 24, 2014, Plaintiff Donald Boulter was in Billings while working for WesTower Communications. Mr. Boulter and another employee stopped at McDonalds for breakfast. They drove the insured vehicle to McDonalds. After eating breakfast, Mr. Boulter and his co-employee exited the restaurant and were returning to the insured vehicle, to drive the insured vehicle to their work duties that day. They began walking across the motorist drive-through, from the commonly used footpath, when a motor vehicle unexpectedly drove by them. This caused Plaintiff to fall, strike his head on the ground, and sustain a traumatic brain injury.

14. That motorist has never been identified.

15. Plaintiff suffered significant injuries and damages from the fall.

16. Plaintiff submitted a claim for uninsured motorist coverage to Defendant. Plaintiff explained that the unidentified motorist was an uninsured motorist under the policy.

17. The Policy provides uninsured motorist coverage to an "insured" that suffers "bodily injury" caused by an "accident". **(Exhibit A, p. 4)**.

18. Plaintiff asserts that he qualifies as an insured under the Policy and is a covered insured.

19. Defendant admits that the vehicle that Mr. Boulter was using that day, "...is a covered 'auto' under the Policy." **(Exhibit B, p. 3)**.

20. Defendant admits that Mr. Boulter sustained bodily injury "...as defined by the policy." **(Exhibit B, p. 3)**.

21. Defendant admits that the unidentified motorist constitutes a "... 'uninsured motor vehicle' as defined by the policy." **(Exhibit B, p. 3)**.

22. The sole dispute is whether Mr. Boulter was "occupying" the covered auto under the Policy. **(Exhibit B, p. 3)**.

23. Under the Policy, an "insured" includes "anyone 'occupying' or using a covered 'auto' or a temporary substitute for a covered 'auto'." **(Exhibit A, p. 2)**.

24. Under the Policy, "'Occupying' means in, upon, getting in, on, out or off." **(Exhibit A, p. 5)**.

25. Plaintiff was, under the terms of the Policy and the applicable law, "occupying" the insured vehicle at the time of the incident causing him injuries.

26. Montana law applies to this case because the incident complained of occurred in Montana, the injuries were sustained in Montana, medical bills were incurred in Montana, any judgment against the underlying uninsured motorist coverage would occur in Montana, any judgment would be paid in Montana, and the place of performance is Montana where Plaintiff is entitled to receive benefits (Montana). As such, Montana law applies. *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶¶16-22, 215 Mont. 281, 68 P.3d 703.

27. The Montana Supreme Court employs the "reasonable connection" test to determine whether an injured person is an occupant of the vehicle for purposes of obtaining coverage under the insured vehicle's insurance. *Estate of Richerson v. Cincinnati Ins. Co.*, 2011 MT 266 ¶10, 352 Mont. 324, 264 P.3d 1087; *Sayers v. Safeco Ins. Co. of America*, 192 Mont. 336, 629 P.2d 659 (overruled in part on other grounds).

28. Under the "reasonable connection" test, the Montana courts looks to whether the "...claimant's activities at the time of the accident 'were so reasonably connected' to the insured auto that, under the law, the claimant could be said to be an occupant within the policy's meaning." *Richerson*, ¶10.

29. Even if Colorado law applied, Plaintiff was "occupying" the vehicle at the time of the incident; there is UM coverage if the injury that gives rise to the claim is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose. *Aetna Cas. & Surety Co. v. McMichael*, 906 P.2d 92 (Colo. 1995).

30. Here, Plaintiff was "occupying" the vehicle at the time of the incident because he was using the vehicle that morning to go to work, using the vehicle to stop at McDonalds for breakfast, and at the time of the event, was walking back to the insured vehicle to drive the vehicle. The entire reason that Plaintiff had the encounter with the uninsured motorist was due to Plaintiff walking to the insured vehicle, to enter the insured vehicle, and to drive the insured vehicle.

31. Pursuant to the provisions of Montana's Declaratory Judgment Act, § 27-8-202, MCA, a person whose "rights, status, or other legal relations are affected by a statute…may have determined any question of construction or validity arising under the…statute", and "obtain a declaration of rights, status or other legal relations thereunder."

32. Pursuant to the provisions of Montana's Declaratory Judgment Act, § 27-8-201, MCA, the courts have the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

33. Pursuant to the provisions of Montana's Declaratory Judgment Act, § 27-8-313, MCA, the courts may grant, "Further relief…whenever necessary or proper."

34. Here, Plaintiff has certain rights, status and other legal relations which have been affected by Defendant's conduct and the application of the collateral source statute or its principles.

35. Pursuant to the provisions of Montana's Declaratory Judgment Act, § 27-8-201, § 27-8-201 ("declaration may be either affirmative or negative in form and effect") and § 27-8-313, MCA, Plaintiff requests the Court to find that Plaintiff is entitled to uninsured motorist coverage under the Policy.

**WHEREFORE**, Plaintiff prays for Judgment against Defendant as follows:

1. For Judgment against Defendant and in favor of Plaintiff;

2. For compensatory damages;

3. For costs of suit incurred herein;

4. For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED and DATED this 16th day of March, 2017.

                                                     BUCKLEY LAW OFFICE, P.C.

                                                    By: _____
                                                    Daniel P. Buckley
                                                    Attorneys for Plaintiffs

POLICY NUMBER: 20 UEN QU0520

COMMERCIAL AUTO
CA 21 50 01 11

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COLORADO UNINSURED MOTORISTS COVERAGE - BODILY INJURY

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Colorado, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### SCHEDULE

Limit Of Insurance:  $                                                                                            Each "Accident"

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay under this coverage only if a. or b. below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".



CA 21 50 01 11                     © Insurance Services Office, Inc., 2010                     Page 1 of 5

    b. Anyone else while "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability, company, corporation or any other form of organization, then the following are "insureds":

    a. Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph A.2.b.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. Punitive or exemplary damages.

5. "Bodily injury" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the least of the following:

    a. The Limit Of Insurance for Uninsured Motorists Coverage shown in the Declarations; or

    b. The amount of damages sustained but not recovered.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Liability coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

**E. Changes In Conditions**

The conditions are changed for Colorado Uninsured Motorists Coverage – Bodily Injury as follows:

1. Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms are revised as follows:

    a. The last paragraph is replaced by the following:

      When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, the loss will be paid in accordance with the following method:

      (1) All applicable policies will pay on an equal basis until the policy with the lowest limit of insurance is exhausted.

      (2) If any "loss" remains and there:

        (a) Are two or more remaining policies whose applicable limits of insurance have not been exhausted, then such policies will continue to pay in accordance with Paragraph (1); or

        (b) Is one remaining policy, then such policy will continue to pay until its limits of insurance have been exhausted.

b. The following provisions are added:

(1) The reference to other collectible insurance applies only to other collectible uninsured motorists insurance.

(2) If there is other applicable insurance available under one or more policies or provisions of coverage, any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

2. Duties In The Event Of Accident, Claim, Suit Or Loss is changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

c. A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

d. The following replaces the lead-in paragraph in the Duties In The Event Of Accident, Claim, Suit Or Loss condition in the Business Auto, Garage, Truckers and Motor Carrier Coverage Forms with respect to an owner or operator of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle":

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

3. The Legal Action Against Us provision is replaced by the following:

a. No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form.

b. In accordance with COLO. REV. STAT. § 13-80-107.5, an "action" or arbitration of an uninsured motorist insurance claim or an underinsured motorist insurance claim shall be commenced or demanded by "arbitration demand" within three years after the cause of action accrues, except:

(1) If the underlying "bodily injury" liability claim against the uninsured motorist is preserved by commencing an "action" against the uninsured motorist within the two-year time limit specified in COLO. REV. STAT. § 13-80-102(1)(d) for a wrongful death action or the three-year time limit specified in COLO. REV. STAT. § 13-80-101(1)(n) for all other tort actions to which this insurance applies, then an "action" or arbitration of an uninsured motorist claim shall be timely if such "action" is commenced or such arbitration is demanded within two years after the "insured" knows that the particular tortfeasor is not covered by any applicable insurance; or

(2) If the underlying "bodily injury" liability claim against the underinsured motorist is preserved by commencing an "action" against the underinsured motorist or by payment of either the liability claim settlement or judgment within the two-year time limit specified in COLO. REV. STAT. § 13-80-102(1)(d) for a wrongful death action or the three-year time limit specified in COLO. REV. STAT. § 13-80-101(1)(n) for all other tort actions to which this insurance applies, then an "action" or arbitration of an underinsured motorist claim shall be timely if such "action" is commenced or such arbitration is demanded within two years after the "insured" received payment of the settlement or judgment on the underlying "bodily injury" liability claim.

c. For purposes of Paragraph 3.b. above, a cause of action accrues after both the existence of the death, injury or damage giving rise to the claim and the cause of the death, injury or damage are known to the "insured" or should have been known by the exercise of reasonable diligence.

4. Transfer Of Rights Of Recovery Against Others To Us is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid. We shall be entitled to recovery only after the "insured" has been fully compensated for damages. However, any recovery made by us shall be reduced by our proportionate share of attorney's fees and expenses incurred in bringing the claim.

   Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

   b. We also have a right to recover the advanced payment.

5. The Two Or More Coverage Forms Or Policies Issued By Us condition is changed by adding the following:

   a. This provision does not apply to Uninsured Motorists Coverage.

   b. No one will be entitled to receive duplicate payments for the same elements of "loss" under Uninsured Motorists Coverage.

6. The following condition is added:

   **Arbitration**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F. **Additional Definitions**

   As used in this endorsement:

   1. "Action" means a lawsuit commenced in a court of competent jurisdiction.

   2. "Arbitration demand" means a written demand for arbitration delivered to us that reasonably identifies the person making the claim, the identity of the uninsured or underinsured motorists, if known, and the fact that arbitration is being demanded.

   3. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

4. "Occupying" means in, upon, getting in, on, out or off.

5. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   b. That is an underinsured motor vehicle. An underinsured motor vehicle means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides a limit that is less than the amount an "insured" is legally entitled to recover as damages caused by the "accident";

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent;

   d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

   e. Whose owner or operator cannot be located after a reasonable attempt for service of process, and either:

      (1) Service of process on the insurer as authorized by COLO. REV. STAT. § 42-7-414 is determined by a court to be insufficient or ineffective after reasonable effort has failed; or

      (2) The report of a law enforcement agency investigating the "accident" fails to disclose the insurer covering the vehicle, and the insurance coverage of such owner or operator when the "accident" occurred is not actually known by the person attempting to serve process.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designated for use mainly off public roads while not on public roads.



**THE HARTFORD**
WESTERN AUTO LIT PLUS OFFICE
PO BOX 14265
LEXINGTON KY 40512

January 27, 2017

**RECEIVED**

FEB 6 2017

*Angel, Coil and Bartlett*

HB 01 006361 65893 H 19 A

ANGEL, COIL & BARTLETT
Attn: Timothy Hammer
125 W. MENDENHALL Ste 201
BOZEMAN MT 59715-3586

Re:  Insured:        WESTOWER COMMUNICATIONS INC
     Claimant:       Donald Boulter
     Date of Loss:   March 24, 2014
     Event Number:   CA0017014563
     Claim Number:   Y51 AU 06818

Dear Timothy Hammer:

This letter is written to you as counsel for Mr. Donald Boulter who is seeking uninsured motorists benefits under Harford Fire Insurance Company policy number 20 UEN QU0520 issued to Westower Communications Inc. ("Policy") for injuries sustained on March 24, 2014. We must advise you that no uninsured motorist coverage is afforded for this claim.

Hartford Fire Insurance Company fully reserves all its rights under the Policy and recognizes that all of Mr. Boulter's rights are also reserved. Any action taken by the Hartford Fire or anyone acting on its behalf shall not constitute an admission of coverage. Portions of the Policy are set forth below for your convenience, however, nothing in this letter is intended to amend, alter or modify the terms and conditions of the Policy, and you are requested to review a copy of the Policy for its full terms and conditions.

**I.   CLAIM**

Based on your correspondence and the police report, we understand that Mr. Boulter was working the day of the accident and was injured while on a break for lunch at McDonald's in Billings, Montana. On the day of the accident, Mr. Boulter was driving a company vehicle, a 2011 International van, VIN 1HTMMAALXBH388138. The van was parked in the McDonald's parking lot and Mr. Boulter was injured while walking to the van. According to the Billings Police Department report, an unidentified white Kia Soul with an unknown plate number was reported to have been driving recklessly through the parking lot, nearly hitting Mr. Boulter and his companion when Mr. Boulter stepped back onto the curb where he slipped and fell, sustaining injuries. He later fell ill and was airlifted to the hospital. Surveillance video confirmed that two white cars had driven through the parking lot near the time of the fall, though the police officer reported that he did not observe either driving recklessly.

We also understand that, though Mr. Boulter was driving the International van on the date of the fall, Mr. Boulter regularly drove a different company vehicle, a Ford F150 pickup with VIN 1FTFX1EF0DKE45132.

Both company vehicles, the International van and the F150, were leased by Westower. Both were licensed in Colorado at the time of the fall.

**II.   COVERAGE POSITION**

MT00057


Exhibit B

Page 1 of 4

The Hartford Fire Policy No. 20 UEN QU0520 issued to Westower Communications includes commercial automobile coverage. The Policy also contains a number of state-specific endorsements providing uninsured motorist coverage. The Policy contains a Colorado-specific form, and does not contain a Montana-specific form. The Colorado Uninsured Motorists Coverage – Bodily Injury endorsement provides:

> For a covered "auto", licensed or principally garaged in, or "garage operations conducted in, Colorado, this endorsement modifies insurance provided under the following:
>
> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM
>
> * * *

As the International Van licensed in Colorado was driven by Mr. Boulter on the day of his fall, the Colorado-specific endorsement was reviewed for possible coverage. The endorsement sets forth the following insuring language:

> A. Coverage
>
> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."
>
> * * *

The endorsement also provides as follows:

> B. Who Is An Insured
>
> If the Named Insured is designated in the Declarations as:
>
> 1. An individual, then the following are "insureds":
>
>    a. The Named Insured and any "family members".
>
>    b. Anyone else while occupying or using a covered "auto" or temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
>    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>    a. Anyone "occupying" or using a covered "auto" or a temporary substitute for covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.



MT00057

  b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

The Business Auto Coverage Form defines the following relevant terms:

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

The Colorado endorsement sets forth additional definitions:

4. "Occupying" means in, upon, getting in, on, out or off.
5. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   * * *

  d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

The van is a covered "auto" under the Policy. Mr. Boulter sustained "bodily injury" as defined by the Policy. As the white Kia could not be identified, it constitutes an "uninsured motor vehicle" as defined by the Policy.

As Mr. Boulter was walking to the van at the time of the accident, he was not in, upon, getting in, on, out or off of the van. Therefore, Mr. Boulter was not "occupying" a covered "auto" as required under the terms and conditions of the Policy. No uninsured motorist coverage is afforded for Mr. Boulter's injuries pursuant to its terms and conditions.

As Mr. Boulter reported that he regularly drove a different vehicle, an F150, in an effort to try to identify any potential coverage which may be afforded Mr. Boulter, the Policy was further reviewed to determine whether there may be coverage due to his use of the F150. As the F150 was also licensed in Colorado the same Colorado-specific endorsement applies. As Mr. Boulter was not in, upon, getting in, on, out or off of the F150, he was not "occupying" the F150 as required by the terms and conditions of the Policy.

As the terms of the Policy are not met, Hartford Fire must deny Mr. Boulter's claim seeking uninsured motorist coverage for the injuries sustained on March 24, 2014.

Hartford Fire fully reserves all rights under the policy and acknowledges that, Mr. Boulter's rights are also reserved. Any action taken by Hartford Fire or anyone acting on its behalf shall not constitute an admission of coverage. Hartford Fire does not intend any of its actions, as set forth in this correspondence, and did not intend any past communication, correspondence, action, or inaction to be a waiver of any of the rights and defenses to coverage available to it, including, but not limited to the rights and defenses provided under the Policy or available at law.

We trust that this coverage position is clear. Should you have any questions regarding the coverage position as set forth in this letter or wish to discuss this matter, please do not hesitate to contact the undersigned.

Sincerely,

*Matthew Sanders*

Matthew Sanders
Claim Consultant
Phone: (877) 625 - 2652 Ext. 2307737
Fax: (866) 809 - 1955
Matthew.Sanders@thehartford.com

Writing Company Name: Hartford Fire Insurance Company