IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION


FILED
JUL 11 2018
Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| DONALD BOULTER,<br><br>Plaintiff,<br><br>vs.<br><br>THE HARTFORD FIRE INSURANCE COMPANY, and JOHN DOES I-V,<br><br>Defendants. | CV 17-68-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court are cross motions for summary judgment. (Docs. 14 and 17). This case presents the issue of whether walking in a parking lot with the purpose of getting back in one's car, after briefly exiting one's car to order a to-go breakfast during a long work-related road trip, is reasonably connected to the operation of one's car. For the following reasons, the Court holds that it is.

I. **Undisputed Facts**

The following facts are taken from the parties' joint statement of stipulated facts and Boulter's statement of undisputed facts, which The Hartford Fire Insurance Company did not dispute. D. Mont. L.R. 56.1(c-d).

Donald Boulter's workday began at 6:00 AM on March 24, 2014. He and a co-worker had to drive a work van 140 miles from Bozeman to Billings to drop off

1

a load of material before picking up another load and delivering it to Buffalo, Wyoming. (Doc. 19, ¶¶ 5-6). After they dropped off the first load in Billings, Boulter and his co-worker decided to grab a McDonald's to-go breakfast before they continued on to Buffalo. (Doc. 19, ¶ 6).

Boulter parked his work van in the McDonald's parking lot, exited the vehicle, and went inside the McDonald's to order his breakfast to-go. (Doc. 19, ¶ 6). After receiving his order, Boulter exited the McDonald's and began walking back towards his work van. (Doc. 16, ¶ 7; Doc. 19, ¶ 7). While walking towards his work van, an unknown motorist drove past Boulter in a rushed manner. (Doc. 16, ¶ 7; Doc. 19, ¶ 8). Boulter stepped backwards out of the way, slipped, and fell to the ground, suffering a serious head injury. (Doc. 16, ¶ 7; Doc. 19, ¶ 8). Boulter was about 60 feet away from his work van when he fell. (Doc. 16, ¶ 8; Doc. 19, ¶ 9). The unknown motorist has never been identified. (Doc. 19, ¶ 10).

Boulter's employer insured Boulter's work van under a policy issued by The Hartford Fire Insurance Company. (Doc. 16, ¶¶ 2-6). The policy provided uninsured motorist coverage to "insureds." (Doc. 16, ¶ 3). Under the policy, an "insured" is anyone "occupying" a covered auto. (Doc. 16, ¶ 3). "Occupying" means "in, upon, getting in, on, out or off." (Doc. 16, ¶ 3). An "uninsured motor vehicle" means "a hit-and-run vehicle and neither the driver nor owner can be

2

identified. The vehicle must hit an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.'" (Doc. 16, ¶ 3).

Later that evening after he fell, Boulter was life-flighted from the emergency room in Bozeman to St. Vincent's hospital in Billings for specialty care of a subdural hemorrhage, craniotomy, and rehabilitation. (Doc. 19, ¶ 11). Boulter made a claim for uninsured motorist coverage under the policy. (Doc. 19, ¶ 12). Hartford Fire agreed the work van was a covered auto, Boulter suffered bodily injury, and the unknown motorist was an uninsured motor vehicle, but denied Boulter coverage on the position that he was not an "insured" because he was not "occupying" the work van when he was injured. (Doc. 16-2 at 3).

Boulter sought a declaratory judgment in state district court that he was an "insured" under the policy. (Doc. 3). Hartford Fire removed the case to federal court. (Doc. 1). The parties filed simultaneous motions for summary judgment on two issues. First, whether Boulter is an "insured" under the policy. Second, whether the unknown motorist is an "uninsured motor vehicle" under the policy. The parties agree Montana law governs the case.

## II. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment

always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III. Discussion

#### A. Boulter is an "insured" because he was walking back to his work van after briefly exiting the vehicle to order a to-go breakfast during a work-related road trip

Hartford Fire argues Boulter is not an "insured" because he was not "occupying" the work van when he was injured. Boulter responds he was "occupying" the work van under Montana Supreme Court precedent. The Court agrees with Boulter.

The Montana Supreme Court has eschewed the traditional contract law analysis in cases involving "occupying" clauses. Normally, courts begin by interpreting the terms of the insurance contract according to their common sense meaning, viewed from the perspective of a reasonable insurance consumer. *Westchester Surplus Lines Ins. Co. v. Keller Transport, Inc.*, 365 P.3d 465, 470 (Mont. 2016). If the terms are clear and explicit, courts enforce them as written. *Wendell v. State Farm Mut. Auto. Ins. Co.*, 974 P.2d 623, 628 (Mont. 1999). If the terms are ambiguous, courts construe them against the insurer and in favor of extending coverage. *Westchester*, 365 P.3d at 470.

In its line of cases interpreting "occupying" clauses, however, the Montana Supreme Court used the reasonable connection test instead of the specific policy language to determine whether a person was "occupying" the vehicle. In those cases, "occupying" was defined as "while in or upon, entering or alighting from," "in or upon or entering into or alighting from," and, exactly as it is here, "in, upon, getting in, on, out or off." *Nelson v. Iowa Mut. Ins. Co.*, 515 P.2d 362, 363 (Mont. 1973); *Sayers v. Safeco Ins. Co. of America*, 628 P.2d 659, 661 (Mont. 1981); *Estate of Richerson ex rel. Richerson v. Cincinnati Ins. Co.*, 264 P.3d 1087, 1088 (Mont. 2011).

Hartford Fire argues the reasonable connection test is used only if the policy terms are ambiguous as applied to the facts before the Court. While that argument

5

has some appeal, the Montana Supreme Court's "occupying" clause cases show otherwise.

First, in all three cases, the Montana Supreme Court applied the reasonable connection test in lieu of an ambiguity analysis. The word ambiguity does not appear in either *Richerson* or *Sayers* at all.

Second, all three opinions imply the reasonable connection test is appropriate because "occupying" clauses are facially ambiguous. In *Richerson*, the Montana Supreme Court rejected the plaintiff's argument to apply the plain meaning of the terms and stated "[t]he reasonable connection test we have employed permits a broad review of the facts, avoiding a microscopic focus on whether the claimant was physically 'on' the vehicle at the moment of impact . . . ." 264 P.3d at 1089-1090. In *Sayers*, the Montana Supreme Court rejected the defendant's argument to apply the plain meaning of the terms and stated that, in Montana, the issue presented by occupying clauses is whether the claimant can satisfy the reasonable connection test. 628 P.2d at 661. In *Nelson*, the Montana Supreme Court reviewed precedent from other courts and concluded "[C]ourts do not give a literal interpretation of [occupying clauses] but do include, within the meaning of the language, acts which are in some reasonable manner connected with the use of the automobile, but not strictly in, upon, entering or alighting from it." 515 P.2d at 363.

Third, in *Nelson*, the only case containing the word ambiguous, the Montana Supreme Court stated the policy was ambiguous after it determined the claimant's activities were reasonably connected to the insured auto. 515 P.2d at 363-364. In other words, in *Nelson*, it appears the reasonable connection test was used to determine whether an ambiguity existed and coverage should therefore be extended.

In sum, it's unclear whether the Montana Supreme Court uses the reasonable connection test because all occupying clauses are facially ambiguous or instead because the reasonable connection test is a more appropriate method of determining ambiguity in occupying clause cases. Regardless, the result is the same. Under Montana Supreme Court precedent, the Court applies the reasonable connection test to determine coverage under the policy's "occupying" clause.

The reasonable connection test asks whether the claimant's activities at the time of the accident were so reasonably connected to the insured auto that the claimant could be said to be an occupant within the policy's meaning. *Richerson*, 264 P.3d at 1089. The reasonable connection test provides a person with a reasonable length of time, after getting out, for the completion of acts which can be reasonably expected from those in similar situations. *Nelson*, 515 P.2d 363-364.

In *Nelson*, a woman's car slipped off the road in the middle of the night during a blizzard with a temperature of eight below. 515 P.2d 362-363. The

7

woman got out of the car and began walking for help. At some point, she slipped, fractured her ankle, and began crawling back to her car. She died of exposure 143 feet from the car. 515 P.2d 362-363. The policy defined "occupying" as "while in or upon, entering or alighting from." The Montana Supreme Court held the woman was "occupying" her car when she died because her activities were "solely directed to extricating herself from the car to a place of safety. Such activity was reasonably carried out and was reasonably connected with the operation of the vehicle." 515 P.2d at 364.

In *Sayers*, Donald Sayers got a ride to a broken down vehicle from a man named Galetti. Sayers wanted to use Galetti's vehicle to jump start the broken down vehicle. While Sayers was leaning over the broken down vehicle, an uninsured vehicle struck the broken down vehicle and pinned Sayers between the broken down vehicle and Galetti's vehicle. 628 P.2d at 660. The policy defined "occupying" as "in or upon or entering into or alighting from." Although Sayers was twelve feet away from Galetti's vehicle at the time of the accident, the Montana Supreme Court held Sayers was "occupying" Galetti's vehicle because Sayers' attempt to jump start the broken down vehicle was "undeniably dependent upon and thus reasonably connected" to the Galetti vehicle. 628 P.2d at 661.

In contrast to *Nelson* and *Sayers*, *Richerson* provides an example of the reasonable connection test limiting coverage. In *Richerson*, Terry Richerson was

backed over by a concrete truck. Richerson got caught in the truck's differential and was drug up to fifty feet. The policy defined "occupying" as "in, upon, getting in, on, out or off." 264 P.3d at 1088. Although Richerson was quite literally "in" or "on" the truck, the Montana Supreme Court held Richerson was not "occupying" the truck because he had no reasonable connection to the truck. 264 P.3d at 1090.

Here, when the accident occurred, Boulter was walking back to his work van with the intention of getting in it after briefly exiting it to order a to-go breakfast on a long work-related road trip. The policy defines "occupying" as "in, upon, getting in, on, out or off." Under these facts, the Montana Supreme Court's application of the reasonable connection test in *Richerson*, *Sayers*, and *Nelson* compels the conclusion that Boulter was "occupying" the work van within the policy's meaning when he was injured.

First, the Court cannot categorically distinguish between (A) a person looking for help 143 feet away from the insured vehicle, (B) a person trying to jump start a vehicle twelve feet away from the insured vehicle, and (C) a person walking back to the insured vehicle 60 feet away after briefly exiting it to order a to go breakfast. Second, there are a variety of similar acts that, under *Richerson*, *Sayers*, and *Nelson*, would probably be considered reasonably connected to the vehicle and expected from a person on a long road trip: walking to and from the

gas station to pay for fuel, walking to and from a rest stop to use the bathroom, or briefly exiting the vehicle to take a picture on a scenic highway. Walking back to the vehicle after briefly exiting it to order a to-go breakfast during a long work-related road trip is materially indistinguishable from those activities. In each instance, the activity of the person is reasonably connected to the insured vehicle because the acts are expected from persons in similar situations and occurred within a reasonable distance and time from exiting the vehicle. The Court holds Boulter was "occupying" the vehicle within the policy's meaning.

### B. The unknown motorist is an "uninsured motor vehicle" under the policy because "hit and run" clauses are void and unenforceable in Montana, Colorado, and Florida

Hartford Fire argues the unknown motorist is not an "uninsured motor vehicle" under the policy because the policy requires the unknown motorist to actually hit an insured or covered auto. Boulter responds that Hartford Fire waived this defense because it admitted in its coverage denial letter that the vehicle was an "uninsured motor vehicle." Boulter also responds that Montana, Colorado, and Florida, the three states where the policy was potentially issued or delivered, have declared "hit and run" clauses void and unenforceable. The Court does not answer whether Hartford Fire waived this defense because it agrees with Boulter's second argument.

10

In *McGlynn v. Safeco Companies of America*, the Montana Supreme Court held clauses that require the uninsured motorist to physically contact the insured are void under Montana Code Annotated § 33-23-201. 701 P.2d 735, 739-740 (Mont. 1985). Hartford Fire argues *McGlynn* is distinguishable for two reasons. First, Hartford Fire argues *McGlynn* is factually distinguishable. Second, Hartford Fire argues *McGlynn* is inapplicable because this policy was not issued in Montana.

*McGlynn* is not factually distinguishable because *McGlynn* applies to all hit and run clauses, regardless of the facts. The question certified from federal court to the Montana Supreme Court was "[m]ay an insurance company issuing a policy of automobile liability insurance in the State of Montana require physical contact of a vehicle driven by an unknown driver with that of the insured, as a precondition of coverage under the uninsured motorist provision of the policy required by [§ 33-23-201]?" The Montana Supreme Court answered no without limitation. 701 P.2d at 736.

Hartford Fire is correct that *McGlynn* was interpreting § 33-23-201, which by its terms applies only to policies delivered or issued in Montana. However, the Court does not have to determine whether the policy was delivered or issued in Montana within the meaning of § 33-23-201, because Florida and Colorado—where Hartfore Fire asserts the policy was issued or delivered—have likewise held

"hit and run" clauses void and unenforceable. *Brown v. Progressive Mut. Ins. Co.*, 249 So.2d 429, 430 (Fla. 1971); *Mavashev v. Windsor Ins. Co.*, 72 P.3d 469, 471 (Colo. Ct. App. 2003) (citing *Farmers Ins. Exch. v. McDermott*, 527 P.2d 918, 919-920 (Colo. Ct. App. 1974)).

The Court holds the "hit and run" clause is void and unenforceable regardless of whether the policy was issued and/or delivered in Montana, Colorado, or Florida. The unknown motorist is an "uninsured motor vehicle" within the policy's meaning.

### C. Boulter is entitled to attorney fees because Hartford Fire forced him to assume the burden of legal action to obtain the full benefit of the insurance contract

Montana follows the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 69 P.3d 652, 655 (Mont. 2003). However, the Montana Supreme Court recognizes equitable exceptions to the American Rule, including the insurance exception. The insurance exception provides that an insured is entitled to recover attorney fees "when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract." *Brewer*, 69 P.3d at 660. *Brewer* applies to first party claims against insurance companies. *Mlekush v. Farmers Ins. Exchange*, 404 P.3d 704, 707 (Mont. 2017).

Here, Hartford Fire forced Boulter to file a lawsuit to obtain coverage and Boulter is a first party claimant. An award of attorney fees is therefore appropriate. *See Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1007 (9th Cir. 2009) (affirming award of attorney fees for first-party claimant against insurance company under *Brewer*).

Boulter must submit a separate motion for attorney fees in accordance with Rule 54(d)(2), including the amount sought and supporting documentation. Boulter does not need to relitigate liability for attorney fees.

### IV. Conclusion and order

1. Boulter is entitled to uninsured motorist coverage because he was an "insured" under the policy at the time of the accident.

2. Boulter's motion for summary judgment (Doc. 17) is GRANTED.

3. Hartford Fire's motion for summary judgment (Doc. 14) is DENIED.

4. Boulter is entitled to attorney fees, the amount to be determined in a subsequent motion in accordance with Rule 54(d)(2).

5. The Clerk of Court is directed to enter judgment in favor of Boulter.

DATED this 11th day of July, 2018.

*/s/ Susan P. Watters*
SUSAN P. WATTERS
United States District Judge